**Todd A. PORTER, Plaintiff,**

v.

**Arthur E. ELLIS, Individually and in his capacity as Superintendent of Public Instruction of the Michigan Department of Education, Defendant.**

No. 4:00–CV–129.

United States District Court,
W.D. Michigan,
Southern Division.

Oct. 26, 2000.

Samuel T. Field, Field & Field, PC, Kalamazoo, MI, for Todd A. Porter, plaintiff.

Denise Carole Barton, Jennifer M. Granholm, Attorney General, Public Employment & Elections Division, Lansing, MI, for Arthur E. Ellis, Individually and in his capacity as Superintendent of Public Instruction of the Michigan Department of Education, defendant.

### OPINION

ROBERT HOLMES BELL, District Judge.

In this federal question action, Plaintiff Todd A. Porter, a bus driver whose left leg was amputated below the knee, alleges that Defendant Arthur E. Ellis, Superintendent of Public Instruction of the Michigan Department of Education, has violated Plaintiff's rights under 42 U.S.C. § 1983 and the ADA by refusing to allow Porter to continue in his employment as a public school bus driver. Before this Court is Defendant's motion to dismiss for lack of subject matter jurisdiction (FED.R.CIV.P. 12(b)(1)) and failure to state a claim upon

which relief may be granted (FED.R.CIV.P. 12(b)(6)). The Court finds that Plaintiff has failed to state a claim upon which relief may by granted.

### Facts

Todd Porter is a thirty-five year old man living in Kalamazoo County. In 1990 Porter's left leg was amputated below the knee as a result of an automobile accident. From September 1997 to September 1998 Porter worked as a school bus driver for Kalamazoo Public Schools. During the next school year, September 1998 to September 1999, Porter drove a school bus for Laidlaw Transit, Inc., in Kalamazoo. In 1998, Porter placed sixth in the Kalamazoo School Bus "Roadeo" competition. Porter has all the required licenses and waivers for driving a public school bus with his handicap, with the exception of a school bus endorsement/waiver through the Michigan Department of Education.

On March 21, 2000, Porter was laid off from his job with Laidlaw because the Michigan Department of Education refused to grant him a waiver to drive a school bus. Porter brings two counts against Arthur Ellis, Superintendent of Public Instruction of the Michigan Department of Education:

I. Violation of 42 U.S.C. § 1983 by discriminating against Plaintiff in violation of the Americans with Disabilities Act.

II. Violation of Plaintiff's Fourteenth Amendment equal protection rights.

### Analysis

In evaluating a motion to dismiss under Rule 12(b)(6) the Court must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995).

*Count I: Violation of 42 U.S.C. § 1983 through the ADA.* Plaintiff alleges that Defendant's actions constitute a violation of 42 U.S.C. § 1983 in that the actions have deprived Plaintiff, under color of state law, of the right and privilege of being employed without discrimination as required by the Americans with Disabilities Act.

Plaintiff asserts that the ADA only provides a remedy against an employer. Ellis is not Porter's employer, so Porter is bringing the ADA against Ellis under section 1983.

■ As Plaintiff admits, a cause of action under the ADA is limited to employers who have discriminated against employees because of a disability. *See* 42 U.S.C. § 12111(2) ("The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee."). Plaintiff has no cause of action under the ADA because it is a third party, not Plaintiff's employer, who is accused of discriminating against Plaintiff. The ADA does not allow a plaintiff to bring a suit against a third party who is not the employer. *See Gonzalez v. National Bd. of Medical Examiners*, 60 F.Supp.2d 703, 709 (E.D.Mich.1999) (National Board of Medical Examiners was not an employer under ADA even though its policies caused plaintiff loss of employment in medical field). Using section 1983 as a conduit to the ADA will not create a cause of action where one does not exist under the ADA itself.

■ Even if Plaintiff had a colorable claim under the ADA, he could not use section 1983 as a conduit for that claim. Not every statutory violation is actionable under section 1983. *See Bartlett v. New York State Bd. of Law Examiners*, 970 F.Supp. 1094, 1144 (S.D.N.Y.1997) (rev'd on other grounds). The Supreme Court has set forth two important exceptions to the general rule that section 1983 provides remedies for deprivations of federally secured rights. In *Wilder v. Virginia Hosp.*

*Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the Supreme Court stated the two exceptions:

> A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983," or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself."

*Id.* (citing *Wright v. Roanoke Redevelopment & Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)). *Bartlett,* 970 F.Supp. at 1144.

Plaintiff's case does not fall within the first exception because the ADA creates enforceable rights. As to the second exception, it is "clear that Congress would not have intended that plaintiffs seek redress for violations of their ADA ... rights through the vehicle of § 1983." *Bartlett,* 970 F.Supp. at 1144.

Even construing the complaint in the light most favorable to Plaintiff and accepting all factual allegations as true, Plaintiff can prove no set of facts in support of his claims that allow him relief in Federal Court. Plaintiff has not stated a claim upon which relief may be granted. This decision, of course, does not effect Plaintiff's ability to litigate against the State's refusal to grant a waiver in the state courts.

b. *Eleventh Amendment Immunity.* The Court need not reach the issue of Eleventh Amendment immunity because the issue is mooted by the failure of the ADA claim. If the Court did address this issue, it would have to follow the recent Sixth Circuit opinion in *Popovich v. Cuyahoga County Court of Common Pleas,* 227 F.3d 627 (6th Cir.2000). In that case, the Sixth Circuit ruled that "Congress was acting outside of its Fourteenth Amendment enforcement authority in applying the ADA to the States." *Id.* at 636. Thus the ADA does not abrogate a state's Eleventh Amendment immunity.

*Count II: Equal Protection Claim.* Plaintiff claims that "[a] distinction between (1)individuals who have a left leg and (2) individuals whose left leg has been amputated at the knee and who seek to operate a school bus ... bears no rational relationship to a legitimate goal of protecting students while being transported on school bus." *See Complaint,* at ¶ 34.

In *Toledo Area AFL—CIO Council v. Pizza,* 154 F.3d 307, 322 (6th Cir.1998), the Sixth Circuit expounded the appropriate scrutiny levels for equal protection claims. Strict scrutiny applies when the claim involves a suspect class or a fundamental right. Intermediate scrutiny involves a quasi-suspect class, and requires the law substantially further a legitimate state interest. If the classification does not involve a suspect class, a quasi-suspect class, or a fundamental right, then a rational basis test is used. The state may merely show that the classification is rationally related to a legitimate state interest.

■ Here, the Court would apply a rational basis test. "It is well established that disability is not a suspect class for purposes of equal protection analysis." *Heller v. Doe,* 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); see also *Popovich v. Cuyahoga County Court of Common Pleas,* 227 F.3d 627 (6th Cir.2000); *Bartell v. Lohiser,* 215 F.3d 550 (6th Cir.2000).

Defendant supplies a rational relation to a legitimate state interest. They assert that

> a rational basis exists to support distinctions between individuals with a limb and those who use a prosthetic device. There is more to driving a school bus than simply driving a vehicle. Certain physical actions may be required by a school bus driver such as evacuating school children from a school bus in the event of a fire, medical emergency, or

evacuating special needs students who may require life support apparatus.

Defendant's *Motion to Dismiss* at 7. (Sept. 5, 2000).

Plaintiff counters that *City of Cleburne* is not dispositive because it came down before the ADA was passed into law, and because in that case the disability was mental retardation. The first point is irrelevant. The ADA did not change the Supreme Court's definition of a suspect class. Second, *City of Cleburne* has been used to show that any disability, not just mental retardation, falls short of being a suspect class. *See Heller, supra.*

Because a disability does not qualify one as a suspect class, and Defendant has supplied a rational basis for its determination, Plaintiff has failed to state a claim upon which relief may be granted.

Accordingly, an order consistent with this opinion will be entered.

### ORDER

In accordance with the opinion entered this date the Court hereby **ORDERS** that:

Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's complaint is **DISMISSED** in its entirety.